UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SAMUEL ANKRAH
    Petitioner,

v.                                                   Case No. 3:06cv554(PCD)

ALBERTO GONZALES, ATTORNEY
GENERAL; MICHAEL GARCIA, ICE
ASSISTANT SECRETARY; STEVEN J.
FARQUHARSON, DISTRICT DIRECTOR,
BUREAU OF IMMIGRATION AND
CUSTOMS ENFORCEMENT (BICE)
and GEORGE SULLIVAN, OFFICER IN
CHARGE, DETENTION AND REMOVAL
OPERATIONS (BICE),
    Respondents.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Samuel Ankrah, has filed with this Court a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. He seeks release from detention by the Department of Homeland Security, Bureau of Immigrations and Customs Enforcement ("DHS BICE") on the grounds that he is a U.S. citizen and thus not subject to the detention provisions of INA § 236, 8 U.S.C. § 1226. Petitioner also argues that the length of his detention violates due process. Respondents contend that this Court lacks jurisdiction over Petitioner's habeas petition pursuant to the REAL ID Act, § 106(b), 8 U.S.C. § 1252(a)(5). For the reasons stated herein, Petitioner's petition for a Writ of Habeas Corpus [Doc. No. 1] is **transferred in part** and **denied in part.**

**I. BACKGROUND**[1]

Petitioner Samuel Ankrah, a native of Ghana, immigrated to the United States in 1987 at

---

[1] The facts described herein are based upon the undisputed facts presented in Petitioner's petition for Writ of Habeas Corpus and the parties' subsequent briefs.

the age of eleven.  He was admitted as a lawful permanent resident based on an application filed by his mother, who at that time was also a lawful permanent resident. (See Pet'r's Mem. Supp. Pet. Writ Habeas Corpus 3.)  Since entering the United States, he has been convicted of three aggravated felonies. Id. at 8.  Removal proceedings were initiated against Petitioner in June of 2005 based on allegations by the Department of Homeland Security ("DHS") that he is not a United States citizen and is subject to removal based upon his state convictions for aggravated felonies. (See Pet'r's Writ Habeas Corpus 6 (citing Pet'r's Exs. Supp. Pet. Writ Habeas Corpus 107)).  He is currently being detained pursuant to 8 U.S.C. § 1226(c)(1) pending a decision on whether he is an alien and, accordingly, whether he is to be removed from the United States.

  Former § 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a), the law that was applicable at the time Petitioner's mother became a United States citizen, stated than an alien could derive citizenship from his mother if (1) his mother became a United States citizen before his eighteenth birthday, (2) he resided in the United States as a lawful permanent resident with his mother, and (3) the paternity of the alien had not been established by legitimation in the country of birth. (See Pet. Writ Habeas Corpus 1, 6 (citing Gorsira v. Loy, 357 F. Supp. 2d 453 (D. Conn. 2005)).  It is uncontested that Petitioner meets the first two prongs of former INA § 321(a).  The sole issue regarding Petitioner's claim to U.S. citizenship is whether paternity was established by legitimation under the law of Ghana. Id. at 7.

  At the initial removal proceedings, Petitioner submitted evidence to the immigration court indicating that, in Ghana, paternity is established for a child born out of wedlock if the father cared for the child's mother during pregnancy and if the child was named according to the specific naming rituals of his tribe. (See Pet. Writ Habeas Corpus 7 (citing Pet'r's Exs. Supp. Pet.

Writ Habeas Corpus 144-211)).  Petitioner's mother and aunt testified before the immigration court that Petitioner's biological father did not care for Petitioner's mother during her pregnancy and that Petitioner was not named in accordance with the specific rituals of his tribe. Id. at 7.

After weighing the evidence, the Immigration Judge ("IJ") ruled on August 24, 2005 that the law of legitimation in Ghana was unclear and that Petitioner had not met his burden of proving that he would be considered illegitimate under Ghanian law.  Since Petitioner had not established that he was a U.S. citizen, the IJ ordered his removal to Ghana based on his aggravated felony convictions. (See Pet. Writ Habeas Corpus 7 (citing IJ Decision, Pet'r's Exs. Supp. Pet. Writ Habeas Corpus 11-13)).  Petitioner filed an appeal of the IJ's decision to the Board of Immigration Appeals ("BIA").  On January 26, 2006, the BIA issued a ruling that the IJ had "erred in concluding that the petitioner did not establish the legal mechanism for legitimation in Ghana" and stated that the remaining question was whether Petitioner's evidence in support of his contention that he would be considered illegitimate in Ghana was credible. (See BIA Decision, Pet'r's Exs. Supp. Pet. Writ Habeas Corpus 3.)  Since the IJ had not specifically ruled concerning the credibility of the testimony of Petitioner's mother and aunt, the BIA remanded Petitioner's case so that the IJ could make a credibility finding as the initial trier of fact. Id.

On March 8, 2006, the IJ issued a new ruling stating that he was unable to make a credibility determination.  Thus, after weighing the evidence a second time, the IJ again ruled that the petitioner had not met his burden of proving that he would be considered illegitimate in Ghana.  Accordingly, the IJ again denied Petitioner's claim for derivative citizenship and ordered his removal to Ghana.  (See Pet. Writ Habeas Corpus 8 (citing  Pet'r's Exs. Supp. Pet. Writ Habeas Corpus 96-97)).  In conformity with his ruling on the merits of Petitioner's case, the IJ

also issued a ruling which stated that Petitioner was subject to mandatory detention under INA § 236(c), 8 U.S.C. §1226(c) as an alien convicted of aggravated felonies subjecting him to removal from the United States. Id. at 94-95. Petitioner has appealed the IJ's orders to the BIA. These appeals are currently pending.

Petitioner moves this court for his immediate release from custody alleging that he is a U.S. citizen and therefore not subject to U.S. immigration laws, including the detention provisions of INA § 236, 8 U.S.C. §1226. (See Pet. Writ Habeas Corpus 1.) Petitioner further argues that his year-long detention constitutes a violation of due process. Respondents assert that, because Petitioner is effectively challenging the IJ's decision that he has not derived citizenship, his detention claim involves a challenge to whether Petitioner is in fact removable from the United States. Respondents argue that Petitioner's detention claim is not independent of a challenge to his removal order and, consequently, contend that this Court lacks jurisdiction over the petitioner's habeas petition pursuant to the REAL ID Act § 106(b), 8 U.S.C. § 1252(a)(5). (See Resp'ts' Resp. Order Show Cause 1-2.)

**II. DISCUSSION**

Pursuant to 8 U.S.C. § 1252, this court lacks jurisdiction over Petitioner's challenge to his detention which involves a claim to United States citizenship; however, the bar to jurisdiction comes not from the section cited by Respondents [Section (a)(5)], but rather from a subsequent section of the statute [Section (b)(5)]. Since the court is without jurisdiction to consider the merits of Petitioner's nationality claim under 8 U.S.C. § 1251(b)(5), the petition is transferred to the Second Circuit Court of Appeals pursuant to 28 U.S.C. § 1631. Petitioner's challenge to the length of his detention is denied.

**A. Petitioner's Challenge to Detention Involving a Claim to United States Citizenship**

*1.  8 U.S.C. § 1252(a)(5) (Section 106 of the REAL ID Act) Does Not Deprive the District Court of Jurisdiction over Petitioner's Challenge to his Detention*

Section 106 of the REAL ID Act of 2005 amended § 242 of the Immigration and Nationality Act ("INA") of 1952 by changing the procedures for judicial review of administrative final orders of removal.[2]  The REAL ID Act specifically strips the district courts of their habeas corpus jurisdiction over orders of removal as § 106(a)(1) of the Act mandates that the courts of appeals shall be the sole and exclusive means for judicial review of an order of removal.[3]

While Congress eliminated the district courts' habeas corpus jurisdiction over review of removal orders, the REAL ID Act does not affect the district courts' jurisdiction over other habeas corpus claims.  The legislative history states that "[S]ection 106 will not preclude habeas review over challenges to detention that are independent of challenges to removal orders.  Instead, the bill would eliminate habeas review only over challenges to removal orders." H.R.Rep. No. 109-72, 175, 2005 U.S.C.C.A.N. 140 (May 3, 2005).

Petitioner contends that § 106 of the REAL ID Act does not apply to his petition because he is not challenging his order of removal. (See Pet'r's Writ Habeas Corpus 4.)  According to Petitioner, his claim challenges only his physical custody and not his removal proceedings. Id.  Although Petitioner concedes that many of the issues present in his detention claim are also

---

[2] The legislative history of the REAL ID Act has been recounted by this court in Brempong v. Chertoff, No. 05cv733 (PCD), 2006 WL 618106 (D. Conn. Mar. 10, 2006) and de Barreto v. I.N.S., No. 02cv283 (PCD), 2006 WL 1030241 (D. Conn. Mar. 10, 2006).

[3] Section 106(a)(1) reads in relevant part: "a petition for review filed with an appropriate court of appeals...shall be the sole and exclusive means for judicial review of an order of removal."  REAL ID Act of 2005,  Pub. L. No. 109-13, § 106(a)(1), 119 Stat. 231 (2005).

5

present in his removal claim, he cites the procedural separation of bond proceedings and removal proceedings in support of his contention that his challenge to detention is independent of his challenge to the removal order. (See Pet'r's Reply Br. 1-2.)

As Petitioner indicates, the law requires the separation of bond and removal proceedings. 8 C.F.R. § 1003.19(d) states that "Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." Furthermore, when confronted with the petitions of detainees who challenge both the order for their removal and their physical custody, courts within the circuit have repeatedly held that the challenges to detention are distinct from challenges to removal and, consequently, do not fall under the purview of § 106 of the REAL ID Act.

In Washington v. I.N.S., No. 04cv3492, 2005 WL 277314 (S.D.N.Y., Aug. 27, 2005), the magistrate judge issued a recommendation which stated, "Section 106(c) of the [REAL ID] Act specifies that the portion of a habeas petition that challenges a final order of removal must be transferred to the court of appeals," but "The REAL ID Act does not provide for transfer of that part of a habeas petition that simply challenges current detention by immigration authorities." Id. at *3. The magistrate judge concluded that it was "appropriate for the district court to deal with that issue," and recommended that the detention claim be transferred to the district in which the petitioner was in custody. Id. at *3-4. The district judge adopted the recommendation of the magistrate judge in its entirety, ordering that the portion of the petition challenging the removal order be transferred to the United States Court of Appeals for the Second Circuit, pursuant to § 106 of the REAL ID Act and that the detention claim be transferred to the district in which the

petitioner was in custody. Washington v. I.N.S., No. 04cv3492, 2005 WL 2778747 (S.D.N.Y., Oct. 19, 2005).

In Barnes v. United States Immigration and Customs Enforcement, No.05cv370(NGG), 2005 WL 1661652 (E.D.N.Y. July 14, 2005), the court also confronted a petitioner challenging both a final order of removal and the lawfulness of his detention pending the resolution of that challenge.  The court held that the REAL ID Act deprived the district court of jurisdiction only over the challenge to removal and that the district court for the district where the petitioner was being detained had jurisdiction over the petitioner's challenge to his physical confinement.  See also Ortega v. Gonzalez, No. 05cv2365 (NGG), WL 1523783 (E.D.N.Y. June 28, 2005) (petition challenging final order of removal transferred to United States Court of Appeals, petition seeking release from detention transferred to district court where petitioner was detained); Azize v. Bureau of Citizenship and Immigration Service, No. 04cv9684(SHS)(JCF), 2005 WL 3488333 (S.D.N.Y., Oct. 7, 2005) (same).  In Foncette v. Bureau of Immigration and Customs Enforcement, No.05cv3218(CBA), 2005 WL 2334374 (E.D.N.Y. Sept. 23, 2005), the court also transferred a petition for relief from confinement to the district court of the district in which petitioner had been confined pursuant to a deportation order.

The petition in this case is distinguishable from the petitions submitted in Brempong and de Barreto, which this Court ruled upon in March 2006.  In those cases, petitioners sought injunctions preventing their removal to one specific country, alleging that if sent home they would be tortured or killed.  In both Brempong and de Barreto, this Court held that § 106 of the REAL ID Act prevented the claims from being heard in the district court as petitioners' claims were "not an independent challenge of detention" but rather sought the direct restriction of the order of

removal. Brempong, 2006 WL 618106, at *6; de Barreto, 2006 WL 1030241, at *6.  In de Barreto, this Court specifically noted that Petitioner had not "challenge[d] her ... physical detention." Id. at *5.

This case is also distinguishable from Blake v. Gonzalez, No. 3:05cv1285, 2005 WL 2850079 (D. Conn. Oct. 24, 2005), cited by Respondents.  In Blake, the Court found that a petitioner who filed a habeas corpus petition claiming that he was denied his right to consular assistance under the Vienna Convention and that the IJ erroneously classified his state conviction as an aggravated offense for purposes of removal, effectively challenged his deportation order and consequently could not proceed in district court pursuant to the REAL ID Act.  The petitioner in Blake did not challenge his detention, but rather challenged the procedures and decision of the IJ in making a determination to deport him. Id. at *1.

In Channer v. Department of Homeland Security, 406 F.Supp.2d 204 (D.Conn. 2005), also cited by Respondents, the court found that the REAL ID Act requirement that habeas cases challenging a final order of removal be heard exclusively in courts of appeals did not apply where a state prisoner's habeas petition challenged the amount of time between his parole and release to the Bureau of Immigration and Customs Enforcement (BICE).  The Channer court reasoned that where the petitioner sought to be released from state custody to BICE custody, the claim related only to his detention and was not a challenge to his order of removal.

The fact that one of Petitioner's challenges to his detention is an argument that could also be used to challenge the order for his removal does not, by itself, divest the District Court of jurisdiction of his habeas claim.  The REAL ID Act contains clear and unambiguous statutory directives divesting the district courts of their habeas corpus jurisdiction to review final orders of

8

removal.  See REAL ID Act of 2005, Pub.L. No. 109-13, § 106(a)(1)(B), 119 Stat. 231 (2005).  It does not contain directives divesting district courts of their habeas jurisdiction over claims regarding detention.  As Congress stated, the bill eliminates "habeas review only over challenges to removal orders." H.R.Rep. No. 109-172, 175, 2005 U.S.C.C.A.C. 140 (May 3, 2005.)

### 2. 8 U.S.C. § 1252(b)(5) Precludes a District Court from Considering a Claim to Citizenship in the First Instance and, thus, Bars This Court's Review of Petitioner's Challenge to Detention Involving a Claim to United States Citizenship

While it is not contested that only aliens are subject to the detention provisions of 8 U.S.C. § 1226, this Court does not have jurisdiction to consider Petitioner's claim that he is not an alien, and thus, not subject to detention under 8 U.S.C. § 1226(c).  According to 8 U.S.C. § 1252(b)(5), claims of United States nationality[4] must be decided by the Court of Appeals in the first instance.

> Subsection (5) of the 8 U.S.C. § 1252(b) , entitled "Treatment of Nationality Claims," provides:
> (A) Court determination if no issue of fact
> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the Petitioner's nationality is presented, the court shall decide the nationality claim.
> (B) Transfer if issue of fact
> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.
> ( C) Limitation on determination
> The petitioner may have such nationality claim decided only as provided in this paragraph.

---

[4] Petitioner's claim to United States citizenship is a claim to United States nationality. Under 8 U.S.C. § 1101(a)(22), the term "national" of the United States means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.

The statute expressly provides that a claim of United States citizenship must be presented to the court of appeals, which "shall transfer the proceeding to the district court" only if it finds "that a genuine issue of material fact about the petitioner's nationality is presented." 8 U.S.C. § 1252(b)(5)(B). Thus, although a "genuine issue of material fact about the petitioner's nationality" may be presented in this case, whether there is a genuine issue of fact concerning national status must be determined in the first instance by the court of appeals. See Marquez-Alemnzar, No. 03cv1601 (GEL), 2003 WL 21283418 (S.D.N.Y. June 3, 2003); Rodriguez v. Ashcroft, No. 02cv1188(AGS)(GWG), 2003 WL 42018 (S.D.N.Y. Jan. 6, 2003.); Alvarez-Garcia v. INS, 234 F.Supp.2d 283, 289 (S.D.N.Y. 2002.).

Courts within the circuit have repeatedly construed 8 U.S.C. § 1252(b)(5) to mean that "nationality claims shall be presented to the court of appeals in the first instance," Marquez-Alemnzar, 2003 WL 21283418 at *2, and that the "sole and exclusive avenue for judicial review of a claim of nationality is by direct petition for review to the Court of Appeals for the Second Circuit." Rodriguez, 2003 WL 42018 at *4. See also Acero v. INS, No. Civ.A.04-0223(DGT), 2005 WL 615744, at *3 (E.D.N.Y. Mar. 16, 2005); Dorival v. Ashcroft, No. CV-02-6162 (DGT), 2003 WL 21997740, at *6 (E.D.N.Y. Aug. 21, 2003); Cabreja v. U.S. Immigration Service, No. 02cv5441(GEL), 2003 WL 22697957, at *2 (S.D.N.Y. Nov. 3, 2003); Cartagena-Paulino v. Reno, No. 00cv2371(LTS)(JC), 2003 WL 21436224, at *3 (S.D.N.Y. June 20, 2003); Alvarez-Garcia 234 F.Supp.2d at 289; Hussein v. Ashcroft, No. 01cv1239(FB), 2002 WL 31027604, at *1 (E.D.N.Y. Sept. 12, 2002); Rivas v. Ashcroft, No. 01cv5871 HB, 2002 WL 2005797, at *3

(S.D.N.Y. Aug. 29, 2002.)[5]

The Second Circuit has affirmed this interpretation, as have circuit courts across the nation.  The Second Circuit noted its jurisdiction over the petitioner's derivative citizenship claim in Drozd v. INS, 155 F.3d 81, 84 (1998).  See also Batista v. Ascroft 270 F.3d 8, 11-12 (1st Cir. 2001) (affirming district court's transfer to court of appeals of habeas petition raising citizenship claim and considering petition alleging derivative citizenship); Fierro v. Reno, 217 F.3d 1, 3 (1st Cir. 2000) (same); Wedderburn v. INS, 215 F.3d 795 (7th Cir. 2000) (entertaining petitioner's derivative citizenship claim); Moussa v. INS, 302 F.3d 823, 826-27 (8th Cir. 2002) (noting that courts of appeals have jurisdiction over petitions alleging derivative citizenship); Baeta v. Sonchick, 273 F.3d 1261, 1263-65 (9th Cir. 2001) (concluding that 1252(b)(5) "vests jurisdiction in the court of appeals...for entertaining assertions of American citizenship made in the context of removal proceedings"); Hughes v. Ashcroft, 255 F.3d 752, 755-57 (9th Cir. 2001) (asserting its jurisdiction over citizenship claims.)

The only arguably contrary authority are a few district court decisions that determined nationality claims on the merits without reference to 8 U.S.C. § 1252(b)(5).  See Lee v. Ashcroft, 216 F.Supp.2d 51, 56-59 (E.D.N.Y. 2002); Shittu v. Elwood, 204 F.Supp.2d 876, 828-82 (E.D.Pa.

---

[5] While many courts have used the general language cited above in asserting that all nationality claims must be brought before the court of appeals in the first instance, some of the courts cited above have used phrasing that may seem to refer specifically to a challenge to a removal order (i.e. "Review of nationality claims in the context of removal orders must occur in the first instance with the court of appeals").  However, even without the numerous cases that make the broader assertion including all nationality claims, such language does not affect the outcome of this case.  While Petitioner submits to this court a challenge his detention and not removal, the IJ's determination of Petitioner's citizenship status and Petitioner's challenge to this decision are certainly "in the context of his removal order" and thus would still fall within the purview of this case law.

2002); Barton v. Ashcroft, 171 F.Supp.2d 86 (D.Conn. 2001).  These decisions, however, appear to conflict with the express language of § 1252(b) regarding the treatment of nationality claims, which ostensibly grant exclusive jurisdiction over nationality claims to the federal courts of appeals, as well as the statutory construction of most courts.

### *3. Transfer of Citizenship Claim to the Court of Appeals*

Where a petitioner improperly brings a citizenship claim in the district court, the appropriate procedure is to transfer the claim to the court of appeals pursuant to 28 U.S.C. §1631. See Dorival, 2003 WL 21997740 at *7 (transferring national status claim to court of appeals pursuant to 28 U.S.C. §1631); Marquez-Alemnzar, 2003 WL 21283418 at *6 (same); Rodriguez, 2003 WL 42018 at *4 (same); Cartagena-Paulino, 2003 WL 21436224 at *3 (same); Alvarez-Garcia, 234 F.Supp.2d at 290 (same); Hussein, 2002 WL 31027604 at *2 (same); Rivas, 2002 WL 2005797 at *5 (same). See also Baeta, 273 F.3d at 1264 (noting that national status claim presented in habeas petition in district court should have been transferred to court of appeals pursuant to § 1631); Batista, 270 F.3d at 11-12 (noting that national status claim presented in habeas petition in district court was properly transferred to court of appeals pursuant to §1631).

> Section 1631 provides in relevant part:
> Whenever a civil action is filed in a court...including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred." 28 U.S.C. § 1631.

Accordingly, Petitioner's challenge to detention based on a claim of United States nationality is transferred to the Second Circuit Court of Appeals.  As noted above, pursuant to 8

12

U.S.C. 1252(b)(5), habeas challenges to nationality determinations cannot originate in the district courts and must be decided in the first instance by the Court of Appeals. Furthermore, the "interests of justice" require preservation of Petitioner's good faith claims of United States citizenship through a transfer of the petition to the Second Circuit.[6]

**B. Petitioner's Challenge to the Length of His Detention**

*1. Jurisdiction*

Petitioner's claim that the length of his detention violates due process falls within this court's jurisdiction. This claim need not be exhausted as it raises constitutional issues which the BIA cannot address. See Arango-Aradondo v. I.N.S., 13 F.3d 610, 614 (2d. Cir. 1994) (BIA does not have authority to adjudicate constitutional issues). 8 U.S.C. § 1226(e) also does not bar this court's review of Petitioner's constitutional challenge to 1226(c). See Demore v. Kim, 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

*2. Due Process Claim*

This court concludes that the length of Petitioner's detention pursuant to 8 U.S.C. §

---

[6] This court expresses no opinion on whether Petitioner has fulfilled the administrative exhaustion requirement. As Petitioner pointed out in his habeas petition, 8 U.S.C. § 1226 does not mandate administrative exhaustion of claims. Thus, the requirement of administrative exhaustion in this case is judicially imposed. The Second Circuit has explained that the distinction between statutorily and judicially imposed exhaustion is "pivotal," because statutory exhaustion requirements are mandatory while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions. Beharry v. Ashcroft, 329 F.3d 51, 56, 58 (2d Cir. 2003) (citing Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94)). See also McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("Where Congress has not clearly required exhaustion, sound judicial discretion governs.") Thus, as the Court did in Martinez-Piedras v. INS, 354 F.Supp.2d 1149, 1155 (S.D.Cal. 2005), this Court transfers Petitioner's nationality claim to the Court of Appeals without ruling on exhaustion.

1226(c) is constitutionally permissible.

It is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 305-05, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). That being said, Congress has considerable authority to limit an alien's right to liberty in order to further its goals of securing attendance at removal proceedings and protecting the community. See Demore, 538 U.S. at 521-22, 531; Doherty v. Thornburgh, 943 F.2d 204, 209 (2d. Cir. 1991). To that end, the Supreme Court maintains a long-standing view that detention during deportation proceedings is a constitutionally valid aspect of the deportation process. Demore, 538 U.S. at 523.

Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens - including those convicted of an aggravated felony. Demore, 538 U.S. at 517-18. In adopting this provision, Congress had before it evidence that one of the major causes of the INS' failure to remove deportable aliens was the agency's failure to detain those aliens during their deportation proceedings. Demore 538 U.S. at 518 (citing Department of Justice, Office of the Inspector General, Immigration and Naturalization Services, Deportation of Aliens After Final Orders Have Been Issued, Rep. No. I-96-03 (Mar. 1996), App. 46; H.R.Rep. No. 104-469, p. 123 (1995).) Accordingly, § 1226 serves the purpose of preventing criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed. Demore, 538 U.S. at 528.

Although Petitioner cites the Supreme Court's decision in Demore in support of his position, the Court's conclusions in that case seem to legitimatize, rather than challenge the length of Petitioner's detention. In Demore, the Court upheld the detention of a lawful permanent

resident alien who filed a habeas petition challenging the no-bail provision of the 8 U.S.C. § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him. The Court stated that the detention of deportable criminal aliens pending their removal proceedings necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings. Id. Accordingly, the Court held that Congress, justifiably concerned that deportable criminal aliens who were not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that such aliens be detained for the brief period necessary for their removal proceedings without providing individualized determinations as to whether aliens presented flight risks. Id. at 513, 531.

In considering the length of detentions under § 1226(c), the Court in Demore noted that, unlike detentions under other statutes, detention pending a determination of removability has a definite termination point. Id. at 529. Although the Court remarked that, in a majority of cases, § 1226 detention lasts for roughly a month and a half, the Court pointed out that, where the detainee appeals the decision of the IJ to the BIA, the appeal takes an average of four months. Id. at 529. Thus, the court observed, in cases where the detainee chooses to appeal, detention under § 1226(c) lasts about five months. Id. at 531.

In addressing the impact of the appeals process on the length of detention, the Demore Court was confronted with the argument that the length of detention required to appeal may deter aliens from exercising their right to do so. The Court responded that "'the legal system...is replete with situations requiring the making of difficult judgements as to which course to follow', and even in the criminal context, there is no constitutional prohibition against requiring the parties to

make such choices." Demore, 538 U.S. at 531 (quoting McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.E.2d 711 (1971)).

Because Petitioner has exercised his right to appeal on two occasions, the pre-removal proceedings have necessarily been prolonged in this case. Consequently, Petitioner's detention pending a determination of removability has necessarily been longer than that of the average detainee who makes fewer appeals. When one considers the unusual circumstances of Petitioner's two appeals in terms of the time estimates discussed in the Demore decision, it becomes evident that the length of Petitioner's detention has not been unconstitutionally disproportional to detentions deemed acceptable by the Supreme Court.

Although Petitioner cites Fuller v. Gonzalez, No. Civ.A.3:04cv2039SRU, 2005 WL 818614 (D.Conn. April 8, 2005), in support of his position, the facts in Fuller are distinguishable from those in the case at bar. First, the petitioner in Fuller was detained for more than two years (twice as long as the Petitioner in this case). Second, the length of the immigration detention in Fuller was more than twice the amount of time the petitioner had served for her underlying criminal conviction. Id. at *5. In this case, Petitioner's immigration detention has lasted a fraction of time for which he had been incarcerated for his underlying felony convictions. Third, because of the particular issues in dispute in Fuller, the Court felt that the petitioner's detention would not end in the reasonably foreseeable future. Id. at *5. Since the only remaining issue in Petitioner Ankrah's case is his citizenship status, an issue which has already been decided on remand to the IJ, Petitioner's case is reasonably likely to be resolved in the foreseeable future. Each of these distinguishable factual circumstances played a key role in the Fuller Court's conclusion that the length of detention was inappropriate in that case.

In Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006), cited by Petitioner, the Court also had before it circumstances very different from those in this case. The Petitioner in Nadarajah, who was repeatedly tortured in his native land, fled to the United States and was detained upon arrival. He applied for asylum, withholding of removal, and protection under the Convention Against Torture. Although both the IJ and the BIA awarded him relief, he continued to be detained and, at the time of the decision, had been imprisoned almost five years. Id. at 1071. Although the Court in Nadarjah made some sweeping statements regarding "the general detention statutes," it seemed to be most concerned that aliens not be detained for "an indefinite period." Id. at 1078. The Court cited Zadvydas v. Davis, 533 U.S. 678 (2001) as authority for its conclusion that, after a presumptively reasonable six-month detention, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. Id. at 1079-80.

In addition to the fact that Nadarajah is distinguishable from the instant case, the Supreme Court has distinguished Zadvydas, the case which forms the basis for Nadarajah's conclusions, from a challenge to detention under § 1226. Demore 538 U.S. 510. Central to the Demore Court's differentiation was the fact that Zadvydas considered detention pursuant to 8 U.S.C. § 1231, not detention pursuant to § 1226. The Court noted that § 1231 governs detention following a final order of removal, whereas § 1226 governs the necessarily limited detention pending a determination on removability. Id. at 527. Moreover, the Demore Court stated that the detention in Zadvydas was materially different because: (1) In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was no longer practically attainable, and thus detention did not serve its purported immigration purpose and (2) the period of

detention in Zadvydas was "indefinite" and "potentially permanent." Id. at 527-29. Neither of these factors are present in the instant case.

### III. CONCLUSION

For the foregoing reasons, Petitioner's petition for Writ of Habeas Corpus [Doc. No. 1] is **transferred in part** and **denied in part.** Petitioner's nationality claim is **transferred** to the Second Circuit Court of Appeals, pursuant to 8 U.S.C. § 1251(b)(5) and 28 U.S.C. § 1631. Petitioner's due process challenge to the length of his detention is **denied**.

The clerk shall close the file.

SO ORDERED.

Dated at New Haven, Connecticut, August 3, 2006.

/s/

Peter C. Dorsey, U.S. District Judge

United States District Court